UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CINDY GILMORE,

    Plaintiff,

    v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

    Defendant.
_____/

No. C 13-0178 PJH

**ORDER AND FINDINGS RE CROSS-MOTIONS FOR JUDGMENT**

The parties' cross-motions for judgment came on for hearing before this court on February 26, 2014. Plaintiff Cindy Gilmore ("plaintiff") appeared through her counsel, Terrence Coleman and Michael Quirk. Defendant Liberty Life Assurance Company of Boston ("defendant" or "Liberty") appeared through its counsel, Pamela Cogan. Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part plaintiff's motion for judgment, and DENIES defendant's motion for judgment as follows.

**FINDINGS OF FACT**

This is an ERISA case. Plaintiff has been employed by Wells Fargo as a computer programmer from January 1996 to the present. CF 00343. Plaintiff is a participant in the Wells Fargo & Company Long-Term Disability Plan ("the Plan"). Liberty provides long-term disability benefits to Plan participants through Policy No. GF3-850-289424-01 ("the Policy").

A.    The Relevant Policy Terms

The Policy provides for the following disability benefits:

> When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this Policy. The benefit will be paid

     for the period of Disability if the covered Person gives to Liberty Proof of continued:
1. Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

CF 00051.

     As used in the above provision, "disability" refers to total disability, and is defined as follows:

    i.    that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
    ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

CF 00037.

     Partial disability benefits is defined to cover situations where the covered person, as a result of injury or sickness, can:

1. perform one or more, but not all, of the Material and Substantial Duies of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or
2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and
3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

CF 00042.

     As stated above, a claimant is required to submit "proof" of disability, which is defined to include the following types of evidence, though the list is non-exhaustive:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;
2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and
3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

CF 00043.

     The Policy also sets forth circumstances under which disability benefits will be discontinued, including "the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician" or "the date the

Covered Person is no longer Disabled according to this policy." CF 00059-60.

B.      History of plaintiff's medical condition

Plaintiff currently works in front of a computer, as she has for years. As a result, she developed severe cervical arthritis, and underwent an anterior cervical spinal fusion surgery in July 2006. During the surgery, screws were inserted to hold plaintiff's spine in place. The surgery was performed by Abid Qureshi, M.D. After the surgery, plaintiff was able to return to work at Wells Fargo on a full-time basis.

In August 2010, plaintiff was injured in a car accident. CF 00412. Plaintiff experienced pain in her neck and right wrist, and tests showed that the screws which had been inserted into her neck during the July 2006 surgery had been fractured. CF 00147-48. To correct the fractures, plaintiff underwent a second surgery (a posterior spinal fusion) on January 24, 2011. This surgery was also performed by Dr. Qureshi.

After the second surgery, plaintiff continued to experience neck pain. Not until four months after the surgery – on May 25, 2011 – did Dr. Qureshi determine that plaintiff had recovered enough to begin physical therapy and rehabilitation. Dr. Qureshi also noted that he did "not want her [referring to plaintiff] going back to work till 8/1/11." CF 00138.

While physical therapy was partially helpful, plaintiff's physical therapist (Dan Burns, P.T.) noted that plaintiff was "progressing slowly" and would experience pain following therapy treatments. CF 00199-200. On July 26, 2011, plaintiff returned to Dr. Qureshi, complaining of increasing neck and arm pain and headaches. CF 00136-37. Dr. Qureshi prescribed further physical therapy and also placed plaintiff on a 20-hour per week work restriction for her upcoming return to Wells Fargo. CF 00260.

While plaintiff did return to work on August 1, 2011, she continued to experience pain, and struggled to maintain a 20-hour per week work schedule. Plaintiff reported increased pain and fatigue at the end of each work day and work week, even with the restricted hours. Dr. Qureshi also found further cervical spine pathology, and thus permanently restricted her work hours to 20 hours per week.

C.   Plaintiff's claims for benefits

Just before the January 2011 surgery, plaintiff submitted a claim for short-term disability ("STD") benefits, which Liberty approved. CF 00025, 00466. The Plan provides for 26 weeks of STD benefits, after which plaintiff was required to show entitlement to long-term disability ("LTD") benefits.

As part of its LTD claim review, Liberty sent requests for updated medical information to Dr. Qureshi and to plaintiff's physical therapist (Dan Burns) on June 13, 2011. CF 00403-410. On the same day, Liberty conducted an initial LTD interview with plaintiff, who reported that Dr. Qureshi would not release her to work until she had completed twelve physical therapy sessions (three of which were already completed). Plaintiff also reported experiencing pain in her neck and right arm, but stated that she planned to return to work on August 1, 2011, possibly on a part-time basis. CF 00013. Plaintiff's physical therapist also noted that plaintiff reported pain in her neck and right arm, including when writing or working on a computer. CF 00370-377.

On July 8, 2011, Liberty sent plaintiff a letter approving LTD benefits beginning on July 24, 2011. CF 00015. On July 29, 2011, Liberty again requested updated medical information from Dr. Qureshi and from plaintiff's physical therapist. CF 00323-330. On the same day, Liberty also called plaintiff for an update on her status. Plaintiff reported that she was still experiencing pain, and that she was being released to work on a part-time basis – five hours per day, four days per week – until her next office visit on October 14, 2011. CF 00010. Plaintiff's physical therapist responded to Liberty's request on August 2, 2011, confirming that plaintiff was still experiencing pain. CF 00315-320. On August 11, 2011, plaintiff sent updated office notes from Dr. Qureshi, stating that plaintiff was still experiencing pain in her neck and right arm (as of July 26, 2011), and confirming his instructions to return to work on a part-time basis. CF 00305-307.

On August 16, 2011, Liberty again requested updated records from plaintiff's physical therapist. On the same day, Liberty requested that an independent physician (Dr. Kenneth Kopacz, M.D.) review plaintiff's file and prepare a peer review report. CF 00301.

4

Two weeks later, on August 30, 2011, Dr. Kopacz issued a two-page report, based on a review of plaintiff's medical records. CF 00285-286. Dr. Kopacz noted that plaintiff had reported neck pain and right arm pain during her most recent visit to Dr. Qureshi (on July 26, 2011), but also concluded that "there is no additional diagnosis available to support the current complaints" and that "there would be no medical necessity for ongoing treatment." CF 00285-286. Dr. Kopacz ultimately concluded that plaintiff "should be able to work in a full time occupation as of 5/25/11 with the only restriction to occasional work activities above shoulder level." CF 00285-286. However, as plaintiff points out, Dr. Kopacz's conclusion was based entirely on a review of plaintiff's medical records, as no interview or in-person medical examination was conducted.

After receiving Dr. Kopacz's report, Liberty determined that plaintiff's part-time work restriction was not justified, because her job did not require overhead reaching. As a result, Liberty terminated plaintiff's LTD benefits, effective September 16, 2011. CF 00248-250.

On February 26, 2012, Plaintiff filed an appeal of the termination of her LTD benefits. CF 00125-207. As part of her appeal, plaintiff submitted her medical records from Dr. Qureshi and her physical therapy records, which included consistent reports of pain in her neck and right arm, which led to her 20 hour/week work restriction. Specifically, plaintiff's physical therapist's records showed that, on days when she worked part-time, plaintiff's pain started at 3 out of 10 in the morning, but increased to 4 or 5 out of 10 by the time that she finished her part-time shift. CF 00189. Plaintiff also submitted a note from a recent (January 6, 2012) visit to Dr. Qureshi, during which he found "disc collapse visible at C4-C5 level" and "mild spondylosis at the level below." CF 00155.

After receiving her appeal, Liberty requested a second peer review report from an independent physician (Dr. Kelly Agnew). Dr. Agnew, like Dr. Kopacz, based his report on a review of plaintiff's medical records, choosing not to conduct an interview or an in-person examination of plaintiff. Dr. Agnew's report noted that plaintiff had complaints of "occasional neck pain" on May 25, 2011, and then reported "increasing neck and right arm

5

pain" on July 26, 2011. CF 00109-110. Dr. Agnew further noted that, after returning to work, plaintiff reported "neck pain after working 3-4 hours." CF 00110. Finally, the most recent medical record cited by Dr. Agnew was from January 13, 2012, when plaintiff reported "continued weakness, numbness and tingling and right arm and neck pain and the inability to lift the right arm without pain." CF 00112. However, despite noting plaintiff's consistent reports of pain, Dr. Agnew concluded that "it does not appear that there is any lingering evidence of any significant neurologic problem to accompany those complaints," and thus, "[a] restriction to twenty hours per week cannot be substantially substantiated." CF 00112-114. Based on Dr. Agnew's report, Liberty upheld the denial of plaintiff's LTD benefits. CF 00097-105.

On January 14, 2013, plaintiff filed suit in this court, alleging two causes of action under ERISA: (1) violation of § 1132(a)(1)(B), seeking payment of past benefits; and (2) violation of § 1132(a)(1)(B), seeking a declaration regarding plaintiff's rights to future benefits, and a declaration that defendant is not entitled to offset any portion of recovery obtained in this action.[1] The parties have stipulated that a de novo standard of review applies. See Dkt. 44. Plaintiff and defendant have now each filed a motion for judgment under Federal Rule of Civil Procedure 52.

## CONCLUSIONS OF LAW

A.   Legal Standard

Under ERISA § 502, a beneficiary or plan participant may sue in federal court under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).

A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo

---

[1] Specifically, plaintiff alleges that she has filed suit against the driver responsible for her August 2010 car accident, and seeks a ruling that any recovery in that case will not offset her LTD benefits from Liberty.

6

1 standard unless the benefit plan gives the administrator or fiduciary discretionary authority
2 to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire &
3 Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Montour v. Hartford Life & Acc. Ins. Co.,
4 588 F.3d 623, 629 (9th Cir. 2009). In this case, the parties have stipulated that the "de
5 novo" standard of review applies.

6 Where an ERISA action claiming wrongful denial of benefits is reviewed under a de
7 novo standard on summary judgment, the court must determine whether benefits were
8 correctly denied based on the evidence in the administrative record. See Firestone, 489
9 U.S. at 115; Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)(en
10 banc).

11 B.   Legal Analysis

12 The central issue raised by plaintiff's first cause of action is whether she is partially
13 disabled under the terms of the Policy, and thus entitled to LTD benefits. Plaintiff bears the
14 burden of establishing such entitlement by a preponderance of the evidence. Muniz v.
15 Amec. Const. Management, Inc., 623 F.3d 1290, 1294 (9th Cir. 2010). The court's
16 determination is limited to the evidence contained in the administrative record, unless other
17 evidence is "necessary to conduct an adequate de novo review of the benefit decision."
18 Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938, 944 (9th Cir.
19 1995).

20 Liberty raises a threshold evidentiary matter, arguing that plaintiff impermissbly
21 included evidence outside of the administrative record in her motion for judgment.[2]
22 Specifically, Liberty objects to three x-ray images included in plaintiff's motion, showing
23 rods, plates, and screws that have been inserted into plaintiff's neck to hold her spine in

---

[2] Liberty filed separate evidentiary objections in violation of Civil Local Rule 7-3(a), which requires any evidentiary objections to be "contained within the brief or memorandum." Accordingly, Liberty's separate objections are stricken. Plaintiff then filed a "response" to the objections, and Liberty, in turn, filed an objection to plaintiff's response. None of these documents were permitted by the Local Rules, and thus, they are all stricken. However, because Liberty did raise its evidentiary objection in the body of its opposition brief, the court will consider the objection.

place, and further shows the screws that were fractured as the result of her August 2010 car accident. See Dkt. 48 at 3-4.  At the hearing, plaintiff responded by arguing that the images were included in the administrative record, as they were sent to Liberty as part of her appeal.  Plaintiff cites to her appeal letter, which stated that she was "including with this letter for your consideration . . . Radiographic studies from November 2010 through January 6, 2012."  CF 00126.  Defendant complains that the images have been "enlarged," and are thus different than the images contained in the administrative record, but plaintiff argues that the images are not enhanced, and while she apparently concedes that the images are "zoomed," she argues that Liberty had the same ability to enlarge the images.  Overall, the court agrees that plaintiff has shown that the images were contained in the administrative record, and thus OVERRULES Liberty's objection.  That the images may have been "zoomed" does not make them materially different from the images contained in the administrative record.  However, the court's ruling is not dependent on its consideration of the images, as the same result would have been reached if the images were excluded from the record.

Turning to the merits of plaintiff's first cause of action, the parties dispute the type of evidence needed to establish that plaintiff is partially disabled under the terms of the Policy.  Liberty maintains that plaintiff needed to present "objective medical evidence" supporting her self-reports of pain.  Liberty's argument is based on the Policy's definition of "proof," which includes "the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence in support of a claim for benefits."  CF 00043 (emphasis added).  However, plaintiff notes that the Policy's full definition of "proof" includes introductory language stating that "'Proof' means the evidence in support of a claim for benefits and includes, but is not limited to, the following."  CF 00043 (emphasis added by plaintiff).  Plaintiff thus argues that, while objective medical evidence may be sufficient to support a disability claim, it is not necessary to do so.

The court notes that two other circuit courts have adopted Liberty's interpretation of

8

the Policy's language.  See Boone v. Liberty, 161 Fed. Appx. 469, 472-74 (6th Cir. 2005); Doyle v. Liberty, 542 F.3d 1352, 1358 (11th Cir. 2008).  However, the court need not resolve the issue in this case, because even if the Policy's terms do require objective medical evidence, the Ninth Circuit has already held that insurers cannot require objective evidence for conditions for which there is no objective diagnostic test.  See, e.g., Salmoaa v. Honda Long Term Disability Plan, 642 F.3d 666, 678 (9th Cir. 2011).  And while the Salomaa court limited its discussion to chronic fatigue syndrome, the Ninth Circuit has also discussed the impracticality of proving pain through objective evidence.  Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir. 2008).

Like the plaintiff in this case, the Saffon plaintiff suffered from a cervical spine pathology that was aggravated by a car crash.  522 F.3d at 866.  The insurer paid LTD benefits for one year, before determining that the plaintiff "no longer met the definition of disability" and terminating benefits.  Id.  As in this case, the insurer in Saffon based its initial denial on the report of a physician who reviewed the plaintiff's medical records, but did not conduct an in-person examination.  The reviewing physician found that the plaintiff's medical record lacked "detailed, objective, functional findings or testing which would completely preclude" plaintiff's return to work.[3]  Id. at 869.  The Saffon plaintiff appealed the benefits termination, and the insurer had a second physician review her records – but like the first reviewing physician, he "neither examined nor interviewed her."  Id.

The Saffon court noted that, in denying the plaintiff's claim and appeal, the insurer was required to give her a "description of any additional information" that was "necessary" for her to "perfect the claim," and was required to do so "in a manner calculated to be understood by the claimant."  522 F.3d at 870 (citing 29 C.F.R. § 2560.503-1(g)).  But instead of doing so, the insurer simply provided "a long series of unconnected adjectives" (purporting to require "detailed, objective, functional findings or testing" in order to perfect

---

[3] Notably, the Saffon plaintiff sought a determination that she was totally disabled, and thus unable to return to work on any basis, whereas the plaintiff in this case seeks only a finding that she is partially disabled and entitled to partial LTD benefits.

9

the claim). Id. The Saffon insurer failed to "explain why the information Saffon has already provided is insufficient" to establish that she was disabled. Id.

The Saffon court emphasized that "individual reactions to pain are subjective and not easily determined by reference to objective measurements." 522 F.3d at 872; see also Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989) ("[P]ain is a completely subjective phenomenon" which "cannot be objectively verified or measured."). The Saffon court vacated the district court's decision entering judgment in favor of the plan administrator, and remanded the case for a determination of whether the plaintiff was actually disabled. 522 F.3d at 873-74.

The court finds the reasoning of Saffon to be persuasive. The administrative record contains multiple self-reports of pain in plaintiff's neck and right arm, and, importantly, plaintiff reported increased pain after working on a part-time basis. And as the Saffon court noted, pain is inherently subjective, and cannot be definitively proven by objective evidence. Also, as in Saffon, Liberty did not provide plaintiff with a description of the specific type of evidence that would be sufficient to perfect her claim, stating only that it was "in need of additional medical information," requesting "office notes, diagnostic test results, therapy notes, treatment notes, procedure reports, and restrictions documentation." CF 00308. Liberty never described to plaintiff the type of evidence that would be sufficient to support her subjective experiences of pain. Indeed, the type of evidence that plaintiff did submit appears to be the best type of evidence available under the circumstances. Plaintiff's records from Dr. Qureshi show that she was experiencing pain in her neck and right arm as of April 2011 (CF 00140), May 2011 (CF 00138), July 2011 (CF 00136-37), September 2011 (CF 00157), November 2011 (CF 00129), and January 2012 (CF 00128). Plaintiff's physical therapy records are even more detailed, showing that she reported "difficulty" with her work day in August 2011 (CF 00196), and in September 2011, she complained of "cervical pain after working 3-4 hours" and was "fatigued at the end of the day," with her self-reports of pain increasing from 2/10 at the beginning of the work day, to 4-5/10 by the end of the day, and 5-6/10 by the end of the work week (CF 00189-80).

Rather than giving credence to these records, Liberty chose to defer to the findings of two physicians who neither examined nor interviewed plaintiff.  See Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 634 (9th Cir. 2009) (refusal to order in-person examination "raise[s] questions about the thoroughness and accuracy of the benefits determination.").  And while Dr. Kopacz and Dr. Agnew did note plaintiff's reports of pain, they disregarded those self-reports and focused on the lack of objective medical evidence to support plaintiff's claim.  In doing so, Liberty ran contrary to the holdings of Salomaa and Saffon, both of which recognized the shortcomings of objective medical evidence in evaluating reports of a subjective phenomenon such as pain.  The court finds that plaintiff's reports of pain are credible, and disagrees with Liberty's counsel characterization (made at the hearing) of plaintiff's part-time work restrictions as a "lifestyle choice."  In particular, the court finds plaintiff's willingness to return to work only six months after spinal surgery to be inconsistent with an attempt to manufacture or exaggerate pain symptoms.  The court also finds that plaintiff's subjective reports of pain are supported by the objective indicia of her spine pathology – especially the broken screws in her neck that were noted in January 2011 (CF 00147-148), and the disc collapse that was noted in January 2012 (CF 00155).  The court finds that plaintiff's consistent reports of pain, noted by plaintiff's physician and physical therapist throughout the relevant time period, combined with the objective evidence of plaintiff's spine pathology, was sufficient "proof" of partial disability under the Policy.  Thus, the court finds that plaintiff has shown that Liberty was incorrect in denying benefits based on the evidence in the administrative record, and GRANTS plaintiff's motion for judgment on the first cause of action and DENIES defendant's motion for judgment on the first cause of action.

As to plaintiff's second cause of action, the court finds this claim unripe for resolution.  While plaintiff may recover funds in her personal injury action against the driver allegedly responsible for her August 2010 car accident, any such recovery appears to be speculative, and thus, the court finds that it lacks subject matter jurisdiction over any claim for clarification of rights to future benefits.  If plaintiff recovers in her personal injury action,

and if Liberty seeks to offset her LTD benefits against any such recovery, plaintiff may then seek a declaration regarding the parties' rights under the Policy.  Accordingly, the court DENIES plaintiff's motion for judgment on the second cause of action.

**IT IS SO ORDERED.**

Dated: April 24, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge